# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| ANNE K. BLOCK, an individual, and NOEL FREDERICK, an individual, | ) ) ) | NO. 70321-8-I |
| Appellants, | ) ) ) | DIVISION ONE |
| v. | ) ) | UNPUBLISHED OPINION |
| CITY OF GOLD BAR, a public agency; CITY OF GOLD BAR CITY COUNCIL, a governing body, | ) ) ) ) | |
| Respondents. | ) ) ) | FILED: March 24, 2014 |

LEACH, C.J. — Anne Block and Noel Frederick appeal the trial court's summary dismissal of their claims against the city of Gold Bar and the city of Gold Bar City Council (Gold Bar) for violations of the Open Public Meetings Act of 1971 (OPMA), chapter 42.30 RCW. They challenge the court's decision that the doctrines of res judicata and collateral estoppel bar their OPMA claim, its conclusion that the city's mayor had sole authority to decide if the city would mediate a legal dispute, its denial of their CR 56(f) motion for a continuance, and its decision that no genuine issue of material fact exists. Finding no error, we affirm.

NO. 70321-8-I / 2

FACTS

The city of Gold Bar, Washington, is organized under the Optional Municipal Code, Title 35A RCW. It has a mayor-council plan of government, defined in chapter 35A.12 RCW. RCW 35A.12.100 provides,

> The mayor shall be the chief executive and administrative officer of the city, in charge of all departments and employees. . . . He or she shall see that all laws and ordinances are faithfully enforced and that law and order is maintained in the city, and shall have general supervision of the administration of city government and all city interests. . . . [H]e or she may cause any legal proceedings to be instituted and prosecuted in the name of the city, subject to approval by majority vote of all members of the council. The mayor shall preside over all meetings of the city council, when present, but shall have a vote only in the case of a tie in the votes of the councilmembers with respect to matters other than the passage of any ordinance, grant, or revocation of franchise or license, or any resolution for the payment of money. He or she shall report to the council concerning the affairs of the city and its financial and other needs, and shall make recommendations for council consideration and action.

In May 2010, Susan Forbes, a resident of the city of Gold Bar, filed a lawsuit against the city alleging violations of the Public Records Act, chapter 42.56 RCW. On October 7, 2010, Forbes wrote a letter to Gold Bar City Attorney Margaret King offering to mediate her lawsuit. On October 26, 2010, Gold Bar Mayor Joseph Beavers and King[1] met in an executive session with the city council to discuss current litigation, including the Forbes litigation.[2]

---

[1] King attended the meeting by telephone conference.
[2] RCW 42.30.110(1)(i) permits a governing body to hold an executive session during a regular or special meeting

-2-

On October 27, 2010, King wrote an e-mail to Forbes, stating, "I shared your mediation offer with the City Council, and am writing to let you know that while the City appreciates the constructive spirit in which the proposal was offered, the City respectfully declines the offer as it does not believe that it would be constructive." On January 6, 2011, the trial court dismissed Forbes's case on summary judgment.[3]

In January 2012, Block and Frederick (collectively Block) filed this action against Gold Bar for violating the OPMA. Block alleged that "the City Council took 'final action' during the executive session on October 26, 2010, in violation of the OPMA" and that "the City Council voted or engaged in analogous polling to come to the determination that the City would not engage in mediation in the Forbes action, in violation of the OPMA."

---

> [t]o discuss with legal counsel representing the agency . . . litigation or potential litigation to which the agency, the governing body, or a member acting in an official capacity is, or is likely to become, a party, when public knowledge regarding the discussion is likely to result in an adverse legal or financial consequence to the agency.

This subsection (1)(i) does not permit a governing body to hold an executive session solely because an attorney representing the agency is present.

[3] We affirmed the dismissal in 2012. Forbes v. City of Gold Bar, 171 Wn. App. 857, 288 P.3d 384 (2012), review denied, 177 Wn.2d 1002, 300 P.3d 415 (2013). Anne Block represented Forbes in this appeal.

On March 9, 2012, Block filed a declaration from Charles Lie, a member of the city council from January 2010 until January 2012, who attended the executive session at issue. Lie testified,

> On or about October 26 2010, as part of my responsibilities and duties of being a city council member, I attended a special meeting at City Hall. An executive session was held in the offices of the Public Works Director. The topic of the executive session was a lawsuit filed by Susan Forbes against the city regarding public records. The option of mediation as an alternative to litigation was discussed. I understood this to require a yes or no decision by the city. There was discussion of the options. At one point, Councilperson Christopher Wright called for a vote and stated that his vote was for litigation. I pointed out that he was out of order calling for a vote in executive session and that we could only vote in public. There was no response from counsel or Mayor Beavers on the question of voting in executive session.
>
> By the close of the meeting, a general verbal agreement had been formed by a majority [of] the council to proceed with litigation and not enter into mediation. I had made my input for mediation as the preferred option. I left the meeting with the understanding that mediation was not going to be pursued.
>
> . . . .
>
> When the council returned to chambers, no action was taken on the record.

In March 2012, Block, Forbes, Lie, Frederick, and Joan Amenn filed recall petitions against Beavers and two city council members, Florence Martin and Christopher Wright, alleging violations of the OPMA related to the October 26, 2010, executive session. The recall petition against Beavers alleged that he "violated the Open [Public] Meetings Act by failing to reconvene an executive

NO. 70321-8-I / 5

session . . . in violation of RCW 42.30.060(1) and or RCW 42.30.020(3) in which the Gold Bar city council unlawfully voted in executive session."[4] The petitions against the city council members alleged that they "violated the Open [Public] Meetings Act after [they] voted in executive session . . . in violation of RCW 42.30.060(1) and or RCW 42.30.020(3) in which the Gold Bar city council unlawfully voted in executive session."

In opposition to the recall petition against Beavers, Gold Bar filed declarations from Beavers and from city council members Martin, Wright, and Jay Prueher. All of these individuals testified, "The executive session was adjourned, and the counsel reconvened the special meeting. No action was

---

[4] RCW 42.30.060(1) states,

> No governing body of a public agency shall adopt any ordinance, resolution, rule, regulation, order, or directive, except in a meeting open to the public and then only at a meeting, the date of which is fixed by law or rule, or at a meeting of which notice has been given according to the provisions of this chapter. Any action taken at meetings failing to comply with the provisions of this subsection shall be null and void.

RCW 42.30.020(3) defines "action" as

> the transaction of the official business of a public agency by a governing body including but not limited to receipt of public testimony, deliberations, discussions, considerations, reviews, evaluations, and final actions. "Final action" means a collective positive or negative decision, or an actual vote by a majority of the members of a governing body when sitting as a body or entity, upon a motion, proposal, resolution, order, or ordinance.

taken, and the special meeting was adjourned." Beavers, Wright, and Prueher also testified, "As was normal for an executive session, there was a spirited discussion, but no vote was taken." On April 13, the court determined that all three recall petitions were legally and factually insufficient.

On April 26, 2012, Forbes and Lie filed another recall petition against Beavers, alleging that he "violated the Open [Public] Meetings Act by failing to reconvene to an open public meeting from an executive session to vote/take action on the record in an open public meeting. The vote/action was taken in executive session held . . . in violation of RCW 42.30.060(1) . . . and or RCW 42.30.020(3)." On May 11, Block sent notices of deposition and subpoenas duces tecum to Beavers, King, and members of the city council, all of whom attended the executive session.

At a May 25, 2012, hearing, the trial court determined that the April 26 recall petition was legally and factually insufficient and entered a written order that included the following conclusions of law:

> 2.1   The charge in the April 26, 2012 Recall Petition is factually insufficient as it alleges a violation of a law that does not exist—failing to reconvene to an open session after an executive session. Additionally, there is no showing that the Mayor intended to violate the Open Public Meetings Act.

> 2.2   The charge in the April 26, 2012 Recall Petition is legally insufficient for the following reasons:  RCW 42.30.060(1) does not apply to the Mayor; the decision to mediate a lawsuit is solely within the Mayor's discretion; and there is no showing of

substantial conduct clearly amounting to misfeasance, malfeasance or violation of the oath of office or that the Mayor unlawfully or intentionally violated the law; RCW 42.30.020(3) is merely a definition of the word "Action" as used in Chapter 42.30 RCW and does not prohibit any conduct.

2.3 The charge in the April 26, 2012 Recall Petition is also barred by res judicata. The Petitioners previously filed a recall petition on March 30, 2012 setting forth the same charge in the instant Petition. Petitioners have not significantly amended the charges from the charges brought in their last recall attempt on the Mayor.

On May 29, a court commissioner granted Gold Bar's motion for a protective order, quashing Block's notice of deposition and subpoena duces tecum directed to King and staying all discovery

for later of 45 days or until after the Court considers the City's motion for summary judgment on the pure legal issues of whether (1) the Mayor (rather than City Council) is authorized to determine whether to mediate a lawsuit in which the City is a defendant, and (b) this Court's prior decisions adjudicating recall petitions as legally insufficient bar this action under the doctrines of res judicata and collateral estoppel.

On June 15, 2012, Gold Bar moved for summary judgment. On July 2, Block filed a CR 56(f) motion for a continuance to take depositions of the city council members. In this motion, Block argued that these depositions "are necessary to determine what happened in the executive session in question. That is the best evidence of what happened. Without the deposition testimony of the people in the room when the events alleged in my Complaint occurred, there is no way for the Court to determine what happened." On July 13, the trial court

held a hearing on both the motion for summary judgment and the motion for a continuance. The court ruled, "Given the protective order that has been properly entered in this matter, I will deny the CR 56(f) motion." The court granted Gold Bar's motion for summary judgment and entered the following conclusions of law:

3.1    There is no genuine issue of material fact in this case.

3.2    The Complaint states claims that were previously ruled upon [in the May 25 order on the recall petition's sufficiency] and are barred by the doctrines of res judicata and collateral estoppel.

3.3    An appeal of a prior recall petition does not bar the application of the doctrines of res judicata and collateral estoppel in this case.

3.4    Executive sessions to discuss pending litigation with legal counsel are expressly authorized by RCW 42.30.110(1)(i).

3.5    Under the Optional Municipal Code, Title 35A RCW and specifically 35A.12.100, the Mayor had sole decision-making authority regarding the conduct of City litigation being discussed in executive session.

3.6    The Complaint fails to state a claim upon which relief can be granted, because as a matter of law:

a)    The October 26, 2010 executive session of the Gold Bar City Council did not constitute a violation of the Open Public Meetings Act,

b)    The City Council did not take a vote,

c)    The City Council was not authorized by law to take a vote on any issue being discussed in the October 26, 2010 executive session and any vote that may have been taken by the City Council would have been ultra vires, void, and would have no force of law, and

d)    The Mayor of Gold Bar had the sole decision-making authority and sole discretion over the conduct of the lawsuit, including whether to engage in mediation in the Forbes lawsuit.

Block appeals.

## STANDARD OF REVIEW

We review de novo a trial court's order granting summary judgment.[5] When reviewing a summary judgment order, we view all of the evidence in the light most favorable to the nonmoving party.[6] "Summary judgment is appropriate 'if . . . there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law.'"[7] We review for abuse of discretion a trial court's denial of a CR 56(f) motion.[8] A trial court abuses its discretion if its decision is manifestly unreasonable or is based on untenable grounds or reasons.[9]

---

[5] Columbia Cmty. Bank v. Newman Park, LLC, 177 Wn.2d 566, 573, 304 P.3d 472 (2013) (citing Mohr v. Grantham, 172 Wn.2d 844, 859, 262 P.3d 490 (2011)).

[6] Columbia Cmty Bank, 177 Wn.2d at 573 (citing Mohr, 172 Wn.2d at 859).

[7] Columbia Cmty Bank, 177 Wn.2d at 573 (alteration in original) (quoting CR 56(c)).

[8] MRC Receivables Corp. v. Zion, 152 Wn. App. 625, 629, 218 P.3d 621 (2009) (citing Coggle v. Snow, 56 Wn. App. 499, 504, 784 P.2d 554 (1990)).

[9] In re Det. of Duncan, 167 Wn.2d 398, 402, 219 P.3d 666 (2009) (quoting Mayer v. Sto Indus., Inc., 156 Wn.2d 677, 684, 132 P.3d 115 (2006)).

ANALYSIS

Block raises four issues. First, she alleges that the court erroneously determined that the doctrines of res judicata and collateral estoppel bar her OPMA claim. Second, Block challenges the court's conclusion that the city's mayor had sole authority to decide if the city would mediate a legal dispute. She also contends that the court erred when it denied her CR 56(f) motion and when it granted summary judgment. We reject Block's claims.

Block first claims that collateral estoppel and res judicata do not bar her OPMA claim because "[a] decision in a recall petition that allegations are not sufficient for a recall from office does not automatically determine whether or not an OPMA violation has occurred by the entities of which the official was a member." Res judicata, or claim preclusion, prohibits relitigating claims and issues that were litigated, or might have been litigated, in a prior action.[10] It generally applies where the subsequent action is identical with a prior action in four respects: (1) persons and parties, (2) cause of action, (3) subject matter, and (4) the quality of the persons for or against whom the claim is made.[11] Res judicata also requires a final judgment on the merits.[12]

_____

[10] Pederson v. Potter, 103 Wn. App. 62, 69, 11 P.3d 833 (2000).
[11] Schoeman v. New York Life Ins. Co., 106 Wn.2d 855, 858, 726 P.2d 1 (1986).
[12] Leija v. Materne Bros., Inc., 34 Wn. App. 825, 827, 664 P.2d 527 (1983) (citing Bordeaux v. Ingersoll Rand Co., 71 Wn.2d 392, 429 P.2d 207 (1967)).

The doctrine of collateral estoppel prohibits parties from relitigating issues in a subsequent proceeding, even when they assert different claims or causes of action.[13] A party seeking to apply collateral estoppel must show that (1) the issues in both proceedings are identical; (2) the earlier proceeding ended in a judgment on the merits; (3) the party against whom collateral estoppel is asserted was a party to, or in privity with a party to, the earlier proceeding; and (4) applying collateral estoppel does not work an injustice on the party against whom it is applied.[14] Block does not dispute that the parties in both proceedings are identical.

Voters may recall a Washington State elected official on legally and factually sufficient charges of malfeasance, misfeasance, or violation of the oath of office.[15] A recall petition must allege facts that, "as a whole, 'identify to the electors and to the official being recalled acts or failure to act which without justification would constitute a prima facie showing of misfeasance'";[16] these

---

[13] Christensen v. Grant County Hosp. Dist. No. 1, 152 Wn.2d 299, 306, 96 P.3d 957 (2004) (quoting Rains v. State, 100 Wn.2d 660, 665, 674 P.2d 165 (1983)).

[14] World Wide Video of Wash., Inc. v. City of Spokane, 125 Wn. App. 289, 305, 103 P.3d 1265 (2005) (quoting Christensen, 152 Wn.2d at 307).

[15] In re Recall of Carkeek, 156 Wn.2d 469, 473, 128 P.3d 1231 (2006) (citing CONST. art. I, §§ 33–34; RCW 29A.56.110).

[16] Carkeek, 156 Wn.2d at 473 (quoting Chandler v. Otto, 103 Wn.2d 268, 274, 693 P.2d 71 (1984)).

facts must also indicate an intention to violate the law.[17] Courts have "a highly limited role in the recall process" and are "limited to protecting the process by ensuring that only legally and factually sufficient charges are referred to the voters."[18] Charges are factually sufficient if they (1) "'state the act or acts complained of in concise language'" and "'give a detailed description including the approximate date, location, and nature of each act complained of'" and (2) "enable the public and the challenged public official to identify the 'acts or failure to act which without justification would constitute a prima facie showing of misfeasance, malfeasance, or a violation of the oath of office.'"[19] "To establish legal sufficiency, petitioners must identify the 'standard, law, or rule that would make the officer's conduct wrongful, improper, or unlawful.'"[20] An official who exercises discretion appropriately or whose actions occurred in the course of justifiable conduct may not be subject to a recall.[21]

---

[17] Carkeek, 156 Wn.2d at 474 (quoting In re Recall of Feetham, 149 Wn.2d 860, 865, 72 P.3d 741 (2003)).

[18] Carkeek, 156 Wn.2d at 473 (citing RCW 29A.56.140; In re Recall of Kast, 144 Wn.2d 807, 813, 31 P.3d 677 (2001)).

[19] In re Recall of Bolt, 177 Wn.2d 168, 173-74, 298 P.3d 710 (2013) (internal quotation marks omitted) (quoting RCW 29A.56.110; Kast, 144 Wn.2d at 813).

[20] Bolt, 177 Wn.2d at 174 (quoting In re Recall of Ackerson, 143 Wn.2d 366, 377, 20 P.3d 930 (2001)).

[21] Bolt, 177 Wn.2d at 174-75 (quoting Cole v. Webster, 103 Wn.2d 280, 283, 692 P.2d 799 (1984)) (citing Kast, 144 Wn.2d at 815).

Here, Block alleges, "The City violated the OPMA by making the decision to decline mediation in an executive session." To establish an OPMA violation, a plaintiff must show that "(1) members of a governing body (2) held a meeting of that body (3) where that body took action in violation of OPMA, and (4) the members of that body had knowledge that the meeting violated the statute."[22]

RCW 42.30.030 declares, "All meetings of the governing body of a public agency shall be open and public and all persons shall be permitted to attend any meeting of the governing body of a public agency." A governing body takes "action" under RCW 42.30.020(3) if it "merely 'communicate[s] about issues that may or will come before the Board for a vote.'"[23] "'Final action' as defined in RCW 42.30.020(3) does not require a formal motion; it can simply be an informal proposal resulting in a positive or negative decision, or an actual vote."[24] Additionally, "a consensus on a position to be voted on at a later council meeting would qualify as a collective position and a 'final action.'"[25]

Block contends that the issues in the recall petition are not identical to the issues in this action because "[h]ere, the issue is whether the City Council, which

---

[22] Wash. Pub. Trust Advocates v. City of Spokane, 120 Wn. App. 892, 902, 86 P.3d 835 (2004) (citing Eugster v. City of Spokane, 118 Wn. App. 383, 424, 76 P.3d 741 (2003)).

[23] Eugster v. City of Spokane, 110 Wn. App. 212, 225, 39 P.3d 380 (2002) (quoting Wood v. Battle Ground Sch. Dist., 107 Wn. App. 550, 565, 27 P.3d 1208 (2001)).

[24] Miller v. City of Tacoma, 138 Wn.2d 318, 331, 979 P.2d 429 (1999).

[25] Eugster, 110 Wn. App. at 225 (citing Miller, 138 Wn.2d at 330-31).

is subject to the OPMA, committed an OPMA violation regardless of the intent of individual council members or agents." To determine if two causes of action are similar, the court considers (1) if prosecuting the second action would destroy or impair rights or interests in the prior judgment, (2) if the two actions involve the same evidence, (3) if the two suits involve infringement of the same right, and (4) if the two suits arise out of the same transactional nucleus of facts.[26]

When the trial court ruled that the second recall petition against Beavers was insufficient in May 2012, it stated, "[C]learly there is identity of subject matter because the subject matter is the executive session and whether or not something happened in it on October 26, 2010, at a Gold Bar Public Works director's office." The court also found, "RCW 42.30.060(1) does not apply to the Mayor; . . . [t]he decision to mediate a lawsuit is solely within the Mayor's discretion." Because both actions required the court to consider if the executive session's attendees acted properly, subject matter is identical.

In arguing that "[a] recall petition is not an adjudication on the merits," Block states, "A court does not determine whether the charges in a recall petition are true." In In re Recall of Pearsall-Stipek,[27] our Supreme Court held that a

---

[26] Rains, 100 Wn.2d at 664 (citing Constantini v. Trans World Airlines, 681 F.2d 1199, 1201-02 (9th Cir. 1982)).

[27] 129 Wn.2d 399, 402, 918 P.2d 493 (1996). In Pearsall-Stipek, the court held that res judicata barred the petitioner from bringing a subsequent recall charge.

court may apply res judicata to recall proceedings. Although the court does not decide if the petitioner's charges are true, the court determines if, "'accepting the allegations as true, the charges on their face support the conclusion that the officer abused his or her position.'"[28] Again, the trial court in May 2012 concluded that the petition against Beavers, who was not a member of the city council, was legally insufficient because he had sole discretion to decide if the city should mediate a lawsuit. In the hearing on the recall petition's sufficiency, the court stated,

> The mayor is the one who has the authority to make a decision about mediation or proceeding with litigation. The fact that that would be discussed with the council for them to have some input, as to what direction to the mayor, would not make that subject to a vote. It's still his decision, and the notice that was sent that the City had decided not to proceed with mediation which the mayor had authority to decide. So even the supplemental materials does not establish there was, in fact, a violation of the Open Public Meetings Act.

Even accepting Block's alleged facts as true, the court determined as a matter of law that Beavers, not the city council, had the authority to decide about mediation and thus determined that no OPMA violation occurred. This case presents the same legal issue.

Finally, Block asserts that applying collateral estoppel would work an injustice on her because the court "precluded [her] from gathering any additional

---

[28] Bolt, 177 Wn.2d at 173-74 (quoting In re Recall of Wasson, 149 Wn.2d 787, 792, 72 P.3d 170 (2003)).

ammunition about what occurred. . . . Block has shown a clear OPMA violation, and discovery would have allowed her to probe the alleged discrepancies of the council member declarants about their versions of the event." Applying collateral estoppel does not work an injustice if a party "had an unencumbered, full and fair opportunity to litigate his claim in a neutral forum."[29] Block does not identify what facts could be discovered that would change the court's res judicata and collateral estoppel determination. The record shows that Block had a full and fair opportunity to litigate if the participants in the executive session acted unlawfully. The court determined that accepting Block's alleged facts as true, she could establish no OPMA violation because the city council had no authority to decide about mediation. Because litigating Block's claims in this action would require relitigating the same claims and issues as the court resolved in the recall actions against Beavers, we hold that the trial court properly applied res judicata and collateral estoppel to bar Block's OPMA claim. Accordingly, we do not address Block's allegation that Gold Bar "secretly abdicated tremendous power to its Mayor."

Block also claims, "In a case where the summary judgment addressed whether or not a 'vote' or collective position was reached on a subject it is reversible error for the trial court to have denied the Rule 56(f) Motion and

---

[29] Rains, 100 Wn.2d at 666 (citing Allen v. McCurry, 449 U.S. 90, 100-01, 101 S. Ct. 411, 66 L. Ed. 2d 308 (1980)).

denied Plaintiff all rights to discovery." CR 56(f) permits a trial court to order a continuance for further discovery when "it appear[s] from the affidavits of a party opposing the [summary judgment] motion that he cannot, for reasons stated, present by affidavit facts essential to justify his opposition." The court may deny a motion for a continuance when "'(1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact.'"[30] "'A material fact is one that affects the outcome of the litigation.'"[31]

In denying Block's motion, the court cited the protective order that was in place at the time, which prohibited discovery; the court did not reach the merits of her motion. Block did not seek discretionary review or reconsideration of the protective order, and she does not challenge it on appeal. Block asserts,

> The declarations filed by the Defendants posed clear questions that should have been allowed to be asked. Appellants should have been allowed to question Martin about her omission of the copycat paragraph 5 regarding a "spirited discussion" and all declarants should have been questioned about the discrepancy in claiming there was "no action" where all but one also admitted to "discussion." They all should [have] been deposed to explore their respective versions of events. . . .

_____

[30] Gross v. Sunding, 139 Wn. App. 54, 68, 161 P.3d 380 (2007) (quoting Turner v. Kohler, 54 Wn. App. 688, 693, 775 P.2d 474 (1989)).
[31] Millson v. City of Lynden, 174 Wn. App. 303, 308, 298 P.3d 141 (2013) (internal quotation marks omitted) (quoting Elcon Constr., Inc. v. E. Wash. Univ., 174 Wn.2d 157, 164, 273 P.3d 965 (2012).

The substance at issue was not what a lawyer said to them or what they said to a lawyer but rather what they said to each other as governing body members of a City Council subject to the OPMA. The trial court further should have allowed discovery as to the issue of abdicated authority, an issue on which Defendants provided only bald conclusions and no factual support.

Martin, Wright, and Prueher all testified that "no action was taken." Lie did not testify that the city council took a vote or agreed on a matter upon which it would vote at a later date. Notably, in response to Gold Bar's motion for summary judgment, Block argued that Lie's declaration "describ[ed] exactly how the decision not to mediate the Forbes case was made" and that "[e]ven without the depositions of the City Councilmembers that will add even more facts to this case, Block has shown an OPMA violation." Block fails to show how the additional testimony that she seeks would affect the outcome of the litigation. Therefore, the trial court did not abuse its discretion when it denied Block's CR 56(f) motion.

Finally, Block claims, "Where attendees at the same meeting present differing versions of what occurs, and there are internal inconsistencies in the attendees' own declarations, the trial court should have denied summary judgment due to the questions of fact." RCW 35A.12.100 requires only that the mayor obtain approval from the city council to initiate lawsuits in the city's name. The decision to accept or to decline Forbes's offer to mediate would not

constitute "caus[ing] any legal proceedings to be instituted";[32] Gold Bar was the defendant in the Forbes litigation.

The city council met in an executive session with legal counsel as permitted by RCW 42.30.110(1)(i). Again, neither Lie nor any of the other attendees testified that the city council took "action" on the mediation decision. The city council's discussions would not constitute "action" under RCW 42.30.020(3) because it had no authority to decide if the city should mediate the Forbes lawsuit.[33] Even if it voted not to mediate, because it did not have authority to decide this matter, the vote would be "null and void" under RCW 42.30.060(1) and thus have no legal effect.

Block also asserts that a permissible discussion under RCW 42.30.110(1)(i) is merely a "discussion 'with legal counsel'—not discussions among council members and the Mayor. It also does not apply to discussion between Councilmembers and counsel geared toward reaching a consensus and making a decision." RCW 42.30.110(1)(i) permits a governing body to hold an executive session "[t]o discuss with legal counsel representing the

---

[32] RCW 35A.12.100.

[33] The e-mail to Forbes declining her offer to mediate stated, "[T]he City respectfully declines the offer." (Emphasis added.) See also In re Recall of Lakewood City Council Members, 144 Wn.2d 583, 587, 30 P.3d 474 (2001) (city council did not violate the OPMA by meeting in an executive session with the city manager and the city attorney to discuss a lawsuit against the city council because the city council did not vote and the city manager nonetheless had authority to join the lawsuit without the city council's approval).

agency . . . litigation or potential litigation to which the agency, the governing body, or a member acting in an official capacity is, or is likely to become, a party." Because Block cites no authority to support such a limited reading of the statute, we reject this argument. Because Block fails to raise a genuine issue of material fact that the city council acted illegally during the executive session, we affirm the court's grant of summary judgment in Gold Bar's favor.

Block requests attorney fees under RAP 18.1 and RCW 42.30.120(2). RCW 42.30.120(2) states, "Any person who prevails against a public agency in any action in the courts for a violation of this chapter shall be awarded all costs, including reasonable attorneys' fees, incurred in connection with such legal action." Because Block does not prevail, we deny her cost request. Because Gold Bar has not requested attorney fees, we do not address its entitlement to them.

CONCLUSION

Because res judicata and collateral estoppel bar Block's claim that Gold Bar violated the OPMA and her challenge to the mayor's authority, the trial court

properly denied her CR 56(f) motion, and Block fails to raise a genuine issue of material fact that the city council violated the OPMA, we affirm.

_Leach, C.J._

WE CONCUR:

_Spearman, J._                    _Becker, J._